UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAMIH OMAR, ) | Case No.: 1:06 CV 2750 |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| MICHAEL CHERTOFF, Secretary ) | |
| Department of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants ) | **ORDER** |

On November 14, 2006, Plaintiff Samih Omar ("Plaintiff" or "Omar") filed suit against Defendants Michael Chertoff, Secretary of the Department of Homeland Security, Eliot Gonzales, Director of the United States Citizenship and Immigration Services ("USCIS"), and Mark B. Hansen, District Director of USCIS (collectively, "Defendants"), seeking review of USCIS's decision denying Plaintiff's applications for naturalization. Defendants thereafter filed a Motion for Summary Judgment (ECF No. 28), and Plaintiff filed a Motion for *De Novo* Hearing (ECF No. 38). This case was referred to Magistrate Judge Nancy A. Vecchiarelli for full pretrial supervision, and on June 22, 2010, Magistrate Vecchiarelli issued a Report and Recommendation ("R&R") with regard to these Motions, recommending that the court deny Plaintiff's Motion for *De Novo* Hearing and grant Defendants' Motion for Summary Judgment. (R&R, ECF No. 56.) Plaintiff filed an Objection to the R&R on July 22, 2010. Upon *de novo* review of all documents in this case, the court adopts the R&R in full and therefore denies Plaintiff's Motion for *De Novo* Hearing and grants

Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff challenges USCIS's decision denying his two applications for naturalization. The first application, filed on September 21, 1998, was submitted on the basis that he had been a permanent resident alien married to a United States citizen for three years prior to filing. To succeed on this application, a petitioner must demonstrate that he or she has been "living in marital union" for those three years. *See* 8 C.F.R. § 219.1(b). Omar and his wife at the time were interviewed by immigration officials concerning their relationship. Prior to a decision from USCIS with regard to his first application, Plaintiff filed a second application on the basis that he had been a permanent resident for at least five years prior to filing. In December of 2005, after USCIS had failed to issue a decision with regard to either application, Plaintiff filed a Petition for Hearing on Naturalization Application in this court. Thereafter, USCIS issued its decision denying both applications, contending that with regard to the first application, Plaintiff failed to establish that he had been living in marital union with a United States citizen for three years prior to filing his application and that he misrepresented the length of time that he was living in marital union. With the second application, USCIS concluded that by falsely claiming to immigration officials that he was living in marital union with a United States citizen for three years in his first application, Plaintiff failed to establish good moral character, which is a requirement for his second application.

Plaintiff seeks, in the instant case, a review of his application for naturalization. Defendants filed a Motion for Summary Judgment, arguing that there is no genuine issue of material fact in this regard as USCIS correctly determined that Plaintiff is not eligible for citizenship. In response, Plaintiff initially filed a Motion for *De Novo* Hearing, claiming that the court is required to hear

this matter based on the testimony of witnesses and that summary judgment is therefore improper. Plaintiff also filed an opposition to Defendants' Motion, stating that he withdraws his first application for naturalization but argues that he did not make any misrepresentations to investigators and therefore his second application was improperly denied.

## II. REPORT AND RECOMMENDATION AND OBJECTIONS

In the R&R, Magistrate Vecchiarelli recommended that the court reject Plaintiff's request for a *de novo* hearing in lieu of determining whether summary judgment is proper. She noted that pursuant to 8 U.S.C. § 1421(c), an applicant for naturalization can seek review of a denial by a United States District Court, and that such review "shall be *de novo*, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application." She explained, however, that *de novo* review and summary judgment are not mutually exclusive and that this review does not require a hearing on the matter where no genuine issue of material fact exists. (R&R at 7, citing *Chan v. Gantner*, 464 F.3d 289, 296 (2d Cir. 2006)). Plaintiff did not offer any objection to this conclusion, and the court agrees based on the case law and reasoning stated in the R&R that summary judgment is permissible in cases filed pursuant to Section 1421(c).

Magistrate Vecchiarelli also recommended that the court grant summary judgment in favor of Defendants on Plaintiff's claim. She explained that there is no genuine issue of material fact with regard to whether Plaintiff is eligible for naturalization based on his applications as he withdrew his first application and he failed to establish good moral character, due to misstatements to immigration officials, as is required for his second application. Her conclusion with regard to his purported misstatements centers on testimony that Omar gave to an INS official when he was interviewed with

regard to his first application for naturalization, which was based on his marriage to a United States citizen. In that interview, Plaintiff was asked several questions about his marriage and in particular their living arrangements in his home in Cleveland, Ohio. The pertinent portion of the transcript reads as follows:

> Q: How many rooms in your house?
>
> A: Two rooms.
>
> Q: Is that bedrooms or two rooms?
>
> A: Two bedrooms and living room and a kitchen.
>
> Q: Who is occupying the bedrooms now?
>
> A: Me and my wife.
>
> Q: You each stay in one room or do you sleep in the same room?
>
> A: Same room sometimes and sometimes we use a different room.
>
> Q: What different room? Do you sleep together or do you sleep in two different rooms?
>
> A: Sometimes we sleep together and sometimes in the event we, you know we go to different room.

(July 5, 2001 Interview of Plaintiff at pp. 3-4, ECF No. 28-13.) On June 29, 2006, five years after this interview, Omar later admits that he had not been living together with his wife, and instead she had been living in Chicago, Illinois for at least two years prior to the interview. (June 29, 2006 Interview of Plaintiff at pp. 13-14, ECF No. 28-16.) However, he did claim that they traveled back and forth to see one another. (*Id.*)

Magistrate Vecchiarelli found that Omar's testimony in 2001 indicates that he was holding

-4-

himself out as living with his wife at the time of the interview, when in fact she had been living in Chicago. She reasoned that when he answered that he and his wife were "occupying" the bedrooms in his home that he was stating that they resided there as Merriam-Webster's Collegiate Dictionary defines "occupy" as "to reside in as an owner or a tenant." (R&R at 12.) She further noted that Omar failed to offer any other definition or meaning to the term "occupy." She then concluded that this testimony established Omar's subjective intent to deceive the federal government in an attempt to obtain an immigration benefit and that therefore the court should grant summary judgment in favor of Defendants.

Plaintiff did object to this portion of the R&R, arguing that Omar was truthful in his initial interview and that if the interviewer had asked him to explain his answer, he would have clarified their living arrangement. He also submitted an affidavit further explaining the living arrangement and relationship with his wife at the time. To support his argument that he was being truthful in his response, he notes that the word "occupy" could also mean "to take up a place in space" according to Merriam-Webster's Collegiate Dictionary. He also maintains that English is not his first language, and that he may have misunderstood the intent behind the question. The court does not find this argument persuasive. There is no indication from the transcript that Omar did not understand the meaning of the term as he did not ask for any clarification on the word's meaning and appears to unequivocally state that he and his wife occupy the rooms in his apartment. Furthermore, Plaintiff, at no time during the interview, stated or otherwise indicated that his wife lived in Chicago and had lived there the past two years despite the fact that the interview centered on their relationship and their living arrangements. Instead, he merely stated that they sometimes "use a different room" to sleep. (July 5, 2001 Interview of Plaintiff at p. 3.)

After a full review of the record and for the reasons stated above, the court finds Plaintiff's Objection without merit and agrees with the reasoning and conclusions offered by Magistrate Vecchiarelli in the Report and Recommendation.

### III. CONCLUSION

For the foregoing reasons, the court adopts in full Magistrate Judge Vecchiarelli's Report and Recommendation (ECF No. 56). Accordingly, the court grants Defendants' Motion for Summary Judgment (ECF No. 28) and denies Plaintiff's Motion for *De Novo* Hearing (ECF No. 38).

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

July 30, 2010